CARL E. POWERS v. HOCKING VAL. RY. AND LAKE SHORE & M. S. RY.

1. DEFECT IN ENGINE NOT PROXIMATE CAUSE OF INJURIES RECEIVED BY FIREMAN CARELESSLY STEPPING FROM ENGINE.

Where a fireman is injured in stepping off his engine backwards and in the dark, and without making any effort to discover where he was stepping, the fact that his reason for getting off was that the engine was out of repair and needed attention does not constitute the proximate cause of his injury or render the railway company liable therefor.

2. FAILURE TO LIGHT BRIDGE OR PROVIDE GUARD RAILS IMPOSES NO OBLIGATION UPON RAILROADS FOR INJURIES TO SERVANTS.

Nor does the fact that the engine happened to be standing at the time on a bridge which was unlighted and not provided with guard rails add to the responsibility of the company or eliminate the element of plaintiff's own negligence as to his safety.

3. SERVANT OF LESSEE OF RAILROAD CANNOT MAINTAIN ACTION OF NEGLIGENCE AGAINST LESSOR.

Section 3305 Rev. Stat., relating to the lease of railroads, covers obligations of the lessor and lessee to the public; hence, does not apply to an action for negligence by an employe of lessee against the lessor and lessee.

ERROR to Lucas common pleas court.

**Harvey Scribner** and **J. H. Southard,** for plaintiff in error.

**King, Tracy, Chapman & Welles** and **Richard Ingles,** for defendant in error.

## KINKADE, J.

The court of common pleas directed a verdict in favor of both defendants at the close of the plaintiff's evidence. Referring to the negligence charged against the Lake Shore & M. S. Railway, we think it very doubtful whether the amended petition stated a cause of action, and if the trial court had sustained the demurrer which was filed by the Lake Shore we probably would have affirmed its action in this regard. There is no evidence of any lease of the Lake Shore tracks to the Hocking Company. True, there is an admission in the record that the Hocking Company at the time of the injury to plaintiff was using that part of the Lake Shore property with the knowledge and consent of the Lake Shore. We do not think the section of the statute (3305) cited, has any application to the case at bar. Even if a lease were shown, the provisions of this section are to cover obligations of the company to the public as was said by Judge Taft in *Hukill v. Railway,*

Powers v. Railway.

72 Fed. Rep. 745 and 753, and do not apply to a case such as is here presented. The plaintiff was in no sense an employe of the Lake Shore Company and that company did not owe to him the duty of exercising ordinary care in furnishing him a safe place to work. Upon careful consideration of the record we fail to find any evidence tending to show that the Lake Shore Company omitted any duty owing by it to the plaintiff, and our conclusion is that the trial court was correct in directing a verdict in favor of that company.

As to the Hocking Valley Company, the negligence charged was a defective engine, failure to light the bridge and failure to place guard rails on the bridge. It is entirely clear that the defective grate bars cannot in any way be regarded as the proximate cause of the plaintiff's injury. At most they merely explain why the plaintiff left his engine when he did. He might have left the engine for any one of many purposes, and if he had alighted as he did in this case the result would have been precisely the same. If a man jumps off an engine in the dark and in so doing goes over the side of a high trestle or bridge, it is not very material just what particular duty he was intending to perform. The plaintiff had a right to get off his engine whenever he so desired in the performance of any act connected with his work which might be proper for him to perform. Had he left the cab to oil some part of the engine or for any other purpose the same thing which happened here must have befallen him. As to the lighting and the guard rail: It is too clear to need comment that had the bridge been lighted as plaintiff claims it should have been, then the absence of guard rails would have been known to the plaintiff and in that event he would have assumed the risk of using the bridge in that condition. Hence the only complaint is the failure to light the bridge. Taking plaintiff's own story as to how he was hurt, and we have read the evidence with care, it is certainly difficult to comprehend how he could have possibly been more reckless of his own safety. No one can read his evidence and reach any other conclusion than that he stepped down out of the cab in the dark backwards without the slightest concern for his own safety. The company is not charged with negligence in not furnishing lanterns for the use of its men when in dark places, but the charge and claim is that places of this kind should be lighted so that the railroad men may go without the aid of lanterns, and if the company does not light all places along its track, and especially places near a railroad yard, then trainmen may assume that whenever and wherever the train or engine chances to stop, that is a safe place to step off backwards in,

the dark, without taking any precaution to learn what the real surroundings are. It scarcely seems necessary to do more than to state such a proposition in order to make manifest the unreasonableness of it. Railroading is hazardous work, and it is common knowledge that railroad property is not generally lighted. Switch and signal lights are not intended to light up the yards, but are intended to indicate the position of switches and targets. They are no more intended to illuminate railroad property generally than the signal lights on vessels are intended to light up the lake or the ocean. The railroad business in this country is not in its infancy and the manner of moving trains and cars is thoroughly known. The fact that railroad tracks and trestles are not commonly lighted is well known, and it is also common knowledge that the bridges and trestles are not provided with guard rails to keep the men from falling off. Neither are there guard rails on the tops of freight cars to keep brakemen from falling off while running along the top of the train in the dark. As has been said railroading is dangerous work at best, and no one engaged in it is warranted in going heedlessly about the discharge of duties requiring great care.

No system of fixed lights along a railroad property could afford the protection to the men, with the constant changing of positions of both men and cars, that is furnished by the individual lanterns in the hands of the men. The universal custom on all well-managed railroads is sufficient proof that the way the work is being done is the practical way to do. The legislature of Ohio has enacted a great many laws for the protection of railroad employes and the safety of persons and property being transported over railroads, embracing the lighting and heating of cars, air brakes, safety appliances, blocking of frogs, and a great many other things which might be enumerated, and it is certainly worthy of note that with all the attention this important subject of railroading has been given by the legislature, no one has ever thought it necessary to require that railroad bridges and trestles must be lighted and equipped with guard rails so that train men who thoughtlessly step off the train in the dark at such points will not get hurt.

The Hocking Valley Company had no right to light this bridge or to place guard rails upon it, as it was the property of the Lake Shore Company. It will be said that this being true, then the Hocking Company had no right to use it in that condition. Had the bridge and the tracks been upon the property of the Hocking Valley Company, we do not think any obligation would have rested upon that company to light the bridge and erect the guard rails as contended for by plaintiff.

Powers v. Railway.

That plaintiff alighted from the engine entirely of his own motion is evidenced from what he says he did and said at the time. He told the engineer what he was going to do and proceeded to do it. The record does not show what the engineer said. If the plaintiff had been allowed to leave in the bill of exceptions what was first printed there .and afterwards erased (but still is in such form as it can be read), we think it would fall very far short of the effect claimed for it in argument concerning this conversation. At any rate, it is not now a part of the record, and we see no prejudicial error in the rulings of the court in this regard. Our conclusion is that the record discloses no omission of duty on the part of the Hocking Valley Company, hence the action of the court of common pleas in directing a verdict for that company was correct and the judgment entered thereon will be affirmed.

**Parker** and **Wildman, JJ.**, concur.